## JOHN HARSCH BRONZE & FOUNDRY CO. v. UNITED STATES.

### No. 44241.

Court of Claims.
April 2, 1945.

---

William E. Carey, Jr., of Washington, D. C. (Rhodes, Klepinger & Rhodes, of Washington, D. C., on the brief), for plaintiff.

Donald B. MacGuineas, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

This suit is brought pursuant to the Act of June 25, 1938, 52 Stat. 1197, 41 U.S.C.A. § 28 note, to recover increased costs which, the plaintiff asserts, it incurred "as a result of the enactment of the National Industrial Recovery Act," in its performance

of three subcontracts under which it furnished metal trim, doors, window frames and other metal parts for post offices at Cleveland, Ohio, and Nashville, Tennessee, and for the National Archives Building at Washington, D. C.

The plaintiff had entered into its subcontracts before August 10, 1933, and was therefore within the provisions of the 1938 Act. It signed the President's Reemployment Agreement, which was modified by the Administrator of the N. I. R. A. by substituting certain provisions of a proposed code for the fabricated metal products industry. As so modified, the agreement fixed a minimum of 35 cents an hour for male factory workers. It also provided that employees receiving more than the prescribed minimum should receive increased pay "by an equitable adjustment of all pay schedules."

A Code of Fair Competition for the Fabricated Metal Products Industry became effective November 12, 1933. It fixed the minimum wage at 40 cents, and provided:

"Equitable adjustments to maintain differentials existing as of May 1, 1933 in all pay schedules of factory employees (and other employees receiving less than $35.00 per week) above the minimums, shall be made on or before fifteen days subsequent to the effective date of this code by any employers who have not heretofore made such adjustments, or who have not maintained rates comparable with such equitable adjustments."

The plaintiff raised wages, after signing the President's Reemployment Agreement, in August, September, and October, 1933. These increases were somewhat irregular. Some employees who received less than the N. I. R. A. minimum were not raised at all during this period, while others were raised to amounts less than the minimum, or to the minimum, or above it. Raises for those already receiving more than the minimum were likewise not uniform. When the Code took effect in November raises to the new minimum of 40 cents, and adjustments for those above that amount were made, but again these increases were not uniform. Occasional increases in wages were made to some employees, long after the taking effect of the Reemployment Agreement and the Code and as late as September 1934 on the Cleveland job, August 1934 on the Nashville job, and April 1935 on the Archives job. Many new employees were hired by the plaintiff after it had raised its wages in the fall of 1933. They were hired at the higher wage rates which had been set by the increases granted to employees already on the pay roll.

The plaintiff claims that it should recover for all increases in wages made by it during the entire period of performance of each of the three contracts. We disagree. We think that the increases made in August, September, October, and November 1933, at which time the plaintiff, pursuant to its agreement or to the code, was revising its wage schedules, are the only increases which can be said, with any certainty, to have occurred "as a result of the enactment" of the N. I. R. A. Individual wage increases are constantly being made in enterprises like the plaintiff's, as employees increase their productive skills on the same job, or are moved to higher paying jobs. We have no reason to suppose that such increases in the wages paid by the plaintiff were caused by the N. I. R. A.

The plaintiff claims that the wages of the employees newly hired after the N. I. R. A. increases were higher than they would have been if the N. I. R. A. had not been enacted, and that it should recover the amount of these increases. We agree. The Government contends that the plaintiff has not adequately proved what these increases were. The proof consisted of schedules presented by the plaintiff's auditor, in which the wage which the job would have rated before the N. I. R. A. had been set by a process of "grading" the new employee by comparing his work with that of old employees and his wage rate with the wage rate, before the N. I. R. A., of the old employees. This method seems to us to be proper. But the Government complains that the superintendent and other officials of the plaintiff who did the grading did not take the witness stand, so that they could be examined on the validity of their grading, about which the auditor who testified had no knowledge. This is a valid complaint, and this evidence, taken by itself, would not be sufficient. We have, however, checked these schedules by comparing the claimed amounts of wage increases asserted to be included in the wages of new employees with the increased amounts proved to have been paid to old employees, for the same period of work, and are satisfied that the grading of jobs was approximately correct. We therefore allow this item of the plaintiff's claim.

The Government would have us disallow all increases above the fixed minima of 35 cents per hour for the Reemployment Agreement period and 40 cents for the Code period. But the plaintiff was as much required to make equitable adjustments of wages in the higher brackets as to bring sub-minimum wages up to the minimum. The fact that the increases were not entirely uniform does not prove that they were not made in an effort toward an equitable adjustment. We have no basis for determining what would have been complete equity as to any individual workman, or for disallowing an increase which tended toward, though it did not accomplish full equity. We think that the evidence shows that all increases which were made in the period when N. I. R. A. increases were being made, were made as a result of the N. I. R. A., within the meaning of the 1938 act.

The Government urges that the plaintiff has not proved that it filed claims within the time set in the Act of June 16, 1934, 48 Stat. 975, 41 U.S.C.A. § 31, as required by the Act of June 25, 1938. The plaintiff did neglect to introduce any direct evidence on that point. But the claims made under the 1934 act are in evidence, produced by the General Accounting Office in response to a call issued by this court. They show that they were prepared and notarized by the plaintiff well within the times set for their filing by the 1934 act. Thus they were ready for filing in time. The office of the Director of Procurement, to which they were sent, placed no mark on them showing the date of filing. But subsequent letters from the plaintiff to that office in regard to the claims referred to the claims as having been filed at specified times which were within six months after the completion of the several contracts. No exception to those statements was taken by the officers of the Government who considered the claims, and the claims were never treated as if they had not been timely filed. We have no doubt that they were so filed.

The plaintiff is entitled to recover $12,755.25. It is so ordered.

WHALEY, Chief Justice, and WHITAKER, and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.